UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
MICHELLE LISANDRELLI,

                    Plaintiff,

        -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
THE ANNE SULLIVAN SCHOOL, a/k/a
PUBLIC SCHOOL 238; MARGARET SCHULTZ,
and ALEXIS BLAIR, *in their individual and
official capacities.*
-------------------------------------------------------------X

**CV 05 2733**

COMPLAINT

Jury Trial Demanded

GARAUFIS, J.

POHORELSKY, M.J.

Plaintiff, MICHELLE LISANDRELLI, by and through her attorneys, LEEDS MORELLI & BROWN, P.C., alleges upon her knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983, to redress violations of Plaintiff's constitutional rights in the terms, conditions and privileges of employment of the plaintiff by the Defendants, as well as deprivation by the Defendants, acting under the color of state law, policies, ordinances, custom and usage of rights, privileges and immunities secured to the Plaintiff by the Constitution of the United States and all laws and statutes thereunder, as well as the New York State Executive Law, Human Rights Law, §290, *et. seq.*; Title 8 of the New York City Administrative Code, and any other causes of action which can be inferred from the facts set forth herein.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Pendent jurisdiction of the Court is invoked under 28 U.S.C. §1367 over the state law causes of action.

3. Venue is proper pursuant to 28 U.S.C. §1391.

## PARTIES

4. Plaintiff, Michelle Lisandrelli, ("Plaintiff" or "Lisandrelli"), lives at 2402 Benson Avenue, Apartment 2A, Brooklyn, New York, 11214.

5. Defendant, The City of New York, at all times hereinafter mentioned, was and still is a public employer doing business at 1633 East Eighth Street, Brooklyn, New York 11223.

6. Defendant, New York City Department of Education ("DOE") is located at 65 Court Street, Brooklyn, NY 11201.

7. Defendant, the Anne Sullivan School, P.S. 238 ("PS 238"), is a public school operated by the New York City Department of Education. It is located at 1633 East Eighth Street, Brooklyn, New York 11223.

8. Defendant, Margaret Schultz ("Schultz" or "Principal") is the Principal of PS 238. Her last known work address is 1633 East Eighth Street, Brooklyn, New York 11223. During relevant times, Schultz was Plaintiff's Supervisor, and therefore, was responsible for,

*inter alia*, the supervision of employees, including Plaintiff. Additionally, Defendant Schultz was a policymaker for PS 238, charged with the responsibility of insuring that employees were not subjected to unlawful discrimination, retaliation or harassment. She was also responsible for properly training and supervising employees with respect to employment issues. Defendant Schultz aided, abetted, incited, compelled and/or coerced the unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6) and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

9. Defendant, Alexis Blair ("Blair" or "Assistant Principal") is the Assistant Principal of PS 238. Her last known work address is 1633 East Eighth Street, Brooklyn, New York 11223. During relevant times, Blair was Plaintiff's Supervisor, and therefore, was responsible for, *inter alia*, the supervision of employees, including Plaintiff. Additionally, Defendant Blair was a policymaker for PS 238, charged with the responsibility of insuring that employees were not subjected to unlawful discrimination, retaliation or harassment. She was also responsible for properly training and supervising employees with respect to employment issues. Defendant Blair aided, abetted, incited, compelled and/or coerced the unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6) and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

## BACKGROUND FACTS

10. In September 1995, Plaintiff commenced working as a teacher for New York City.

11. In or around 1996, Plaintiff was diagnosed with multiple sclerosis. This disability substantially limits one or more of Plaintiff's major life activities.

12. In 1996, Plaintiff commenced working at PS 238 as a full time teacher.

13. In or around 1999, Margaret Schultz ("Schultz") became the principal at PS 238.

14. In 1999, Schultz re-assigned Plaintiff to a "cluster" position. As part of this new role, Plaintiff was no longer assigned a classroom to teach, rather she was assigned to substitute for other teachers and to teach students in small groups.

15. By letter dated March 3, 2000, the DOE's Medical Bureau granted the Plaintiff three reasonable accommodations: (1) a morning break; (2) limited walking and stair climbing; and (3) a single classroom assignment.

16. In response to Plaintiff's granted reasonable accommodations, Schultz said to Plaintiff in an offensive manner "I can't believe that."

17. In 2000, after Plaintiff was granted her reasonable accommodations, Schultz directed Plaintiff to walk up to the fourth floor.

18. In March 2000, Plaintiff requested to be reasonably accommodated. Specifically, *inter alia*, Plaintiff requested from Schultz not to have to walk up and down stairs, and to have limited climbing and walking throughout the day. Plaintiff provided the March 3, 2000 letter from the Medical Bureau to Schultz. Schultz then directed Plaintiff to report to the District 21 Personnel Director, Samuel Amster ("Amster"). Plaintiff then reported to Amster. While Plaintiff was in Amster's office, Schultz was on the telephone with him. Amster then told Plaintiff, words to the effect of, "Schultz will give you your accommodation, if you agree to leave in June." In response, Plaintiff said that she would leave the school if she can teach a first, second or third grade class. This arrangement was agreed to. However, Plaintiff was not fully accommodated for the remainder of the 2000 school year and she was removed from PS 238 in June 2000.

19. Commencing in September 2000 and through to and including parts of 2001, Plaintiff was not given a full time teaching position as promised and as she had in the past. Instead, Plaintiff was assigned to a District Office, to perform clerical work, and to substitute or cover for other teachers in four different schools. When Plaintiff was assigned to cover teachers, on many occasions, she was assigned to classrooms on the upper floors of schools without elevators.

20. In or around 2001, Plaintiff was assigned to work at PS 253 as a full time teacher.

21. By letter dated, August 13, 2002, based on a determination by the DOE's Medical Director, Plaintiff was granted five additional reasonable accommodations: (1) to be assigned to a classroom on the first or second floor or to a building with an elevator; (2) to have no escort duties including during fire drills; (3) to be given assistance with carrying materials and preparing bulletin boards; (4) to be assigned to one classroom as a cluster or revert from cluster position to regular classroom position and be assigned one classroom; and (5) to be given an air conditioned room.

22. By letter dated November 14, 2002, based on a determination by DOE's Medical Director, Plaintiff was granted an additional reasonable accommodation. Plaintiff was granted the assistance of a paraprofessional.

23. In or around 2003, Lisa Speroni became principal at PS 253.

24. In October 2003 and throughout the school term, Plaintiff complained to Speroni that her paraprofessional, whose function was to aid Plaintiff as a reasonable accommodation, was not doing there job.

25. Moreover, PS 253 did not have an elevator. On one occasion, Speroni directed Plaintiff to go to the fourth floor. Plaintiff informed Speroni that she could not walk up the steps. Speroni told Plaintiff, "go to the fourth floor or go home." Accordingly, Plaintiff was not reasonably accommodated.

26. In March 2004, Plaintiff went out on medical leave.

27. By letter dated, April 2, 2004, based on a determination by the DOE's Medical Director, Plaintiff was granted additional reasonable accommodations: (1) no escort duties; and (2) and to be transferred to a school with an elevator.

28. In September 2004, Plaintiff was reassigned to PS 238, where she worked previously under the supervision of Schultz, to teach Kindergarten.

29. Prior to commencing at PS 238, Plaintiff had been granted the following reasonable accommodations by the Medical Bureau: (a) a paraprofessional to help Plaintiff, *inter alia*, with the physical demands of the job, (b) a school building with an elevator, (c) a single class room, (d) a morning break (e) no escort duties; (f) to be given assistance with carrying materials and preparing bulletin boards; and (g) air conditioning in her classroom. These accommodations were granted by the Department of Education in April 2004, November 2002, August 2002, May 2001, and March 2000.

30. However, upon commencement at PS 238, Plaintiff was not given all of her reasonable accommodations. Plaintiff was never assigned a paraprofessional to assist her (there was a paraprofessional to assist the children). Plaintiff was not permitted to take a break in the morning. Plaintiff was not assigned to a room with air conditioning until February 2005 despite the fact that air-conditioned classrooms were available five months earlier.

31. Additionally, despite her prior requests of teaching higher grade levels than Kindergarten, so she would not have to expend substantial physical energy, Plaintiff was nonetheless assigned to teach a Kindergarten class by Schultz.

32. Additionally, the DOE failed to provide Plaintiff with a school with a proper a entrance. PS 238's ramp entrance, which Plaintiff needed to use to enter the school building, did not have a working door bell. On or about September 7, 2004, Plaintiff sought to use the entrance with a ramp, however, the door was locked, and the door bell did not work. Plaintiff later informed the Principal, Margaret Schultz of the locked ramp door and the broken door bell. Throughout the school year up until March 2005, because the doorbell was broken, Plaintiff was forced to stay outside and wait for someone to let her in the school on most school days. Other entrance ways, which did not have a ramp, were not locked. Accordingly, the City of New York and the DOE failed to provide the proper public accommodations to disabled individuals and to provide Plaintiff a reasonable accommodation.

33. In September 2004 to present, on numerous occasions, Plaintiff complained to the Medical Bureau that she was not being reasonably accommodated.

34. In early September 2004, Plaintiff informed the Principal of her need of accommodation and provided to Ms. Schultz five letters from the Medical Bureau granting such accommodations. Despite the documentation, Schultz informed the Plaintiff that she refused to provide Plaintiff with a paraprofessional. Schultz said, words to the effect of, "you have an elevator, you don't need a para."

35. In early September, 2004, Blair came into Plaintiff's classroom and said "why don't you think about taking a leave of absence." Clearly, an offensive and hostile conduct aimed at degrading the Plaintiff and her disability.

36. On or about the middle of September, 2004, the Plaintiff had a meeting with Schultz and Harry Balmander, her union representative. At this meeting, Plaintiff requested her accommodations which were granted by the Department of Education in April 2004, November 2002, August 2002, May 2001, and March 2000.

37. By letter dated, September 20, 2004, based on a determination by the DOE's Medical Director, Plaintiff was granted the following reasonable accommodations: (1) to be transferred to a school with an elevator; (2) no escort duties; (3) to be given assistance with carrying materials and preparing bulletin board; and (4) to be given an air

conditioned room. The letter also stated that the accommodations granted in November 2002, August 2002, May 2001, and March 2000 were no longer necessary.

38. Dr. Jacobson of the Medical Bureau rescinded Plaintiff's right to an accommodation for both a morning break and for a paraprofessional, without affording the Plaintiff notice or an opportunity to be heard and despite the fact that said reasonable accommodations would not cause an undue hardship. Thereafter, the Plaintiff called the Medical Bureau and asked to speak to Dr. Jacobson. Dr. Jacobson's assistant, Miss Dawson, refused to allow Plaintiff to speak with the doctor.

39. On or about October 6, 2004, Schultz sent a letter to the Superintendent of Schools, Iris Baum, requesting an independent medical examination of Plaintiff. Schultz accused the Plaintiff, in this letter, of being "unfit to teach." After being notified by the Medical Bureau, the Plaintiff appeared for her scheduled medical examination.

40. On or about October 15, 2004, Blair reviewed the Plaintiff's class, and, without basis, assigned her a "U," an "unacceptable" rating for the informal observation. Blair's review was an inaccurate assessment of Plaintiff. Additionally, Blair directed Plaintiff to prepare formal lesson plans.

41. On October 18, 2004, the day before Plaintiff was scheduled for a medical examination that was requested by Schultz, Plaintiff was asked in degrading manner by Schultz, "how

did you get your accommodations" and asked Plaintiff "when was the last time you went to medical, don't tell me it was the last time I sent you." Schultz then criticized Plaintiff's attendance records for no legitimate business reason. Schultz recited all of the past five years' of the Plaintiff's attendance at her various schools. There was no benign reason for Schultz to have sought to unearth the Plaintiff's attendance records, dating back more than five years.

42. On October 19, 2004 Plaintiff went to her medical examination. The Plaintiff was deemed fit to teach by the Medical Bureau. Plaintiff was informed that in order for the reasonable accommodations which were rescinded to be reinstated, that she must submit medical documentation. Plaintiff timely had her doctor submit the requested documentation, however, Plaintiff's reasonable accommodations were not timely granted. Plaintiff's accommodations were granted by a December 2004 letter, which Plaintiff was notified of in January 2005.

43. Commencing on or about October 2004, on numerous occasions, Plaintiff requested that the computers in her classroom be turned on and/or operational. Plaintiff's request was left unremedied.

44. At the end of November, Plaintiff called her union representative to try to obtain a handicapped parking spot for her. Throughout November 2004, December 2004 and January 2005, Plaintiff contacted the Medical Bureau about whether her accommodations

Page 11 of 16

would be granted, including the handicap parking spot. The Medical Bureau did not respond. Accordingly, the City of New York and the DOE failed to provide the proper public accommodations to disabled individuals and to provide Plaintiff a reasonable accommodation.

45. By letter dated, December 11, 2004, based on the determination of the Medical, Leaves and Benefits Office, Plaintiff was granted the following accommodations: (1) an elevator school or first floor classroom; (2) no escort duties; (3) assistance of a paraprofessional in the classroom to handle heavy lifting and bulletin board activities as needed; (4) A.M. preparation if administratively feasible; (5) the permission to use a cane in the school; and (6) an air conditioned room.

46. In January 2005, Plaintiff was obligated to meet with Assistant Principal Blair to review pre-observation. Blair told Plaintiff "be honest, it's because of your MS that you don't understand."

47. On or about February 4, 2005, Plaintiff, through her union, grieved Schultz and Blair's discriminatory actions against her. Schultz denied the accusations, and the Plaintiff's claims were denied.

48. On or about February, 2005, Blair gave the plaintiff yet another "U" for an observation.

49. On or around March 18, 2005, Blair and Schultz called a meeting with the plaintiff and her union representative, Don LaRubbio. Schultz threatened to give the plaintiff a "U" rating for the year.

50. On or around April, 13, 2005, Plaintiff was receiving medical treatment through an intravenous at home. Blair called Plaintiff and told her that Plaintiff's classroom would be observed on April 18, 2005. Plaintiff was out sick, and would not return to work until April 18, 2005. When she was informed that she was on an intravenous, Blair said, "oh, you sound good."

51. Upon information and belief, in this last school term (2004/05), Plaintiff's classroom has been observed more times then any other tenured teacher for no legitimate business reason. In the 2004/05 school term, Plaintiff's classroom has been observed four times. Also, on numerous occasions, Plaintiff has been given poor ratings, reprimanded and disciplined for no legitimate business reason. Upon information and belief, Schultz and Blair are subjecting Plaintiff to this harassment and discrimination in an attempt to have Plaintiff's employment with the New York City Department of Education cease.

52. Throughout her tenure at PS 238, Plaintiff was not given a consistently available paraprofessional or her other requested accommodations by the DOE, Schultz and Blair

nor was she provided with a proper entrance way into PS 238. The Defendants removed the Plaintiff's reasonable accommodations at will, and/or simply ignored her requests for reasonable accommodations.

53. Incidents similar to the above occurred regularly and were severe and/or pervasive. Plaintiff was offended by the above incidents and expressed her objection to the same.

54. As a direct and proximate result of the aforementioned discrimination and/or retaliation, Plaintiff was caused to suffer loss of earnings, accrued benefits, in addition to suffering great pain, humiliation, as well as physical and emotional damages.

## CLAIMS FOR RELIEF

55. The Defendants wrongly discriminated and retaliated against Plaintiff based her disability and her opposition to discriminatory practices, and have failed to reasonably accommodate Plaintiff. These actions are in violation of 42 U.S.C. §1983, the New York State Executive Law, Human Rights Law, §290, et. seq., and Title 8 of the New York City Administrative Code under the New York City Human Rights Law.

56. The Defendants' have, while acting under color of state law, deprived Plaintiff of her constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the

New York State Constitution. Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights. Such deliberate indifference may be inferred in the following ways:

a. Defendants custom or practice of discriminating and retaliating against plaintiff based on her disability and/or perceived disability and because she opposed discriminatory practices. Defendants failure to reasonably accommodate Plaintiff. The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b. Supervisors failed to properly investigate and address allegations of discrimination and retaliation.

c. Inadequate training/supervision was so likely to result in the discrimination and/or retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d. Policymakers engaged in and/or tacitly condoned the discrimination and/or retaliation.

57. The individual Defendants unlawfully participated in and/or permitted the aforementioned discrimination to perpetuate, without abatement, in violation of

Page 15 of 16

Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983. The individuals are also subject to punitive damages for their violations of 42 U.S.C. § 1983.

58. The individual Defendants in their personal capacities, aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law, Human Rights Law, § 296(6) and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

WHEREFORE, Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, liquidated, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated:   Carle Place, New York
         June 6, 2005

Respectfully Submitted,

LEEDS MORELLI & BROWN, PC
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York 11514
(516) 873-9550

RICK OSTROVE (RO-7248)
GREGORY SCOLIERI (GS-3501)